Alvin Hawkins, J.,
delivered the opinion of the Court.
The questions presented for our consideration arise mainly upon exceptions to the report of the Commissioner.
Before proceeding to notice these exceptions, we will notice an objection taken to the deposition of Mrs. German, the widow of the testator.
She proves various statements of the testator, and it is argued that she is an incompetent witness to prove the statements and conversations of her deceased husband.
We think the proposition correct upon familiar rules of evidence; but the objection comes too late.
It is said in argument the reading of this deposition *182 Avas excepted to in the court below, and that the Chancellor overruled the exception.
But we are unable to find from the record that any exception whatever was taken to this deposition, either before the Clerk and Master, by whom it was taken, or before the Chancellor, upon the hearing, or at any other time; and it has long been the well-settled practice in this State, that when there has been no exception taken to the reading of a deposition in the court below, none can be taken in this court, not even for incompetency apparent upon the record.
To permit süch a practice to proceed would enable a party to entrap his adversary, or take him by surprise, by raising objections to evidence in this court, which might have been obviated had- they been made in the court below: 3 Yer., 508; 2 Sneed, 637; 2 Head., 289.
Tullas and wife excepted to the report of the Commissioner because of the allowance of interest upon legacies from the date of the probate of the will, when it ought only to have been allowed from the expiration of one year from that time.
The Commissioner allowed interest upon the legacies of $900 each, to Z. H. German and Elvira A. Simmons, and the legacy of $350 to the heirs of Mahala Anthony, from the probate of the will until paid, and erroneously calls them “specific legacies.”
By the fourth clause in the will, the testator directs his executors to sell the tract of land upon which he lived, for one-third cash and the balance on such time as they might deem best, after allowing his wife a rea *183 sonable time to remove from tbe place, and to divide the proceeds into eight parts.
By the fourth clause he directs that four slaves be sold for cash, (one of which he sold a short time before his death, on six months’ time;) that his executors sell two-thirds of his “perishable property” on such credit as they might deem best, and collect all moneys due him by note, account or otherwise.
He then provides that the proceeds of the sale of the slaves and of the two-thirds of the “perishable” property; the cash on hand at his death, if any, and whatever should be collected on claims due him, together with two-eighths of the proceeds of the sale of the. land, shall constitute a fund, out of which his debts and the expenses of administering his estate, should first be paid. He then gives a legacy of $700 to his daughter, Fannie E. Tullas; thirdly, to his son, Z. H. German, a legacy of $900; and to his said son, in trust for testator’s daughter, Eliza A. Simmons and her children, a legacy of $900; and to the children of his daughter, Mahala D. Anthony, a legacy of $350. All of these legacies, the testator directs, shall be paid out of said fund; and should there be a residuum, he gives the. same to his daughter, Fannie E. Tullas.
Thus, it will be seen, the legacies upon which interest has been claimed are not -specific, but demonstrative legacies, payable out of a particular fund. Such conform more to the incidents and analogies of general than of specific legacies.
It does not appear, nor can we infer, that the testator intended they should be paid immediately after his *184 death; but on the other hand, it is very' apparent such was not his intention or expectation. The fund out of which they were to be paid was to be raised by a sale of property, a large portion of which was to be sold on time, and moneys collected on debts due him at his death, together with cash on hand, if there should be any.
The will fixes no time when these legacies shall be due and payable, nor can such time be ascertained by any inference to be drawn from the will.
There is a class of legacies which carry interest from the death of the testator; but these do not fall within the rule, as applicable to that class. The will failing to fix or to indicate the time when these legacies shall be due and payable, they belong to that class upon which, under a general rule of law, interest will be computed from the end of one year after the death of the testator;
The Chancellor overruled the exceptions, and allowed interest upon the legacies from the probate of the will, which was soon after the death of the testator. This, we think, was erroneous: Dardin vs. Orgain and Wife, 5 Cold., 211; Mills vs. Mills, 3 Head., 705.
Tullas and wife also except because the commissioner had failed to charge Z. H. German with interest on sums of money which came to his hands, being proceeds of property sold by the executors.
We see nothing in this record to sustain this exception, and think the Chancellor properly disallowed it.
The same parties also except because the commissioner had failed to charge Z. H. German with interest *185 on $350, which, it is stated, the report and the proof show- he received in 1862.
The report states' that Z. H. German — the executor in whose hands the management of the proceeds of the sale of land was placed by agreement of the other executors — is- chargeable, with amount of first instalment and interest, with the sum of $3,141.30. The record fails to show ■ when the land was sold, or on what terms, or when the purchase money was paid.
The report shows that said executor paid, out of the proceeds of first instalment to legatees under the will, in 1860 and 1861, $2,787.50, of which $507.50 was to the residuary legatee, leaving in his hands,. as part of the residuum — which is by the will burdened with the expenses of the administration — the sum of $353.80. The Chancellor, erroneously as we think, sustained this exception, and directed that Z. H. German’ be charged with interest upon said sum.
The retention by the executors, of a reasonable portion of this fund, out of which, under the will, the reasonable and legitimate expense of administration must be paid by the executors, was certainly entirely proper; and there is nothing .whatever in this record showing any reason why this executor should be charged with interest on the same.
Tullas and wife also except, upon the ground that the compensation allowed, together with attorneys’, fees, are excessive, and ought not to be allowed.
It does not appear from the report that any counsel or solicitor’s, fees, were allowed. The report credits Daniel German, Jr., as one of the executors, with the *186 sum. of $8,318.24, on account of disbursements made by him in due course of administration, with interest on respective payments; also, with the sum of $200 as compensation, and refers to Schedule A to the report.
This schedule, we apprehend, was intended to show the items of which the aggregate amount of credits was composed; but it is not in this transcript; and we are wholly unable, from the record, to discover whether it embraced attorneys’ fees or not; or if it did, whether they were excessive or not; and from all we can see, the allowance of $200 to Daniel German, as executor, for collecting assets amounting to more than $10,000, was certainly not excessive.
The report also shows an allowance of $350 to Z. H. Germam, who collected and distributed the proceeds of the sale of the land, amounting, with interest, to over $12,000. This, too, was certainly very reasonable, and can in no sense, be said to be excessive.
The Chancellor overruled this exception, and, as we think, correctly.
Tullas and wife further except, because, as it is alleged, the commissioner has charged the payment of costs of administration, attorney’s fees, etc., wholly upon the residuum, when the same ought to have been paid by the legatees, out of their legacies in the proceeds of the sale of the real estate.
Without, in this place, expressing any opinion as to who should pay the costs of this litigation, we think this exception was also properly disallowed by the Chancellor.
The testator, after providing for the raising of the fund before-mentioned, directs, that. all his just debts *187 and the expenses of tbe settlement of his estate, shall first be paid. He then gives to certain of his children and grand-children, certain legacies out of the remainder of the fund, and the residue, if any, to his daughter, Fannie E. Tullas.
This whole fund was, by the testator, burdened with his debts and the expenses of administering his estate; and it can make no difference that the practical effect is to diminish the residue. The payment of any other legacy, payable out of this fund, would have the same effect, and the residuary legatee would have the same cause of complaint.
If the commissioner has allowed counsel fees, or charged the residuum with the payment of the same, we are unable, from this record, to discover the fact.
Tullas and wife also except, because the commissioner failed to charge Daniel German, Jr., with $150, with interest, on account of a mule alleged to have been purchased by him from the testator.
The Chancellor, as we think, erroneously allowed this exception, and directed that Daniel German, Jr., be charged with the same.
Tullas and wife also except, because the commissioner failed to charge Daniel German, Jr., with the hire of slave, Joé, for three years, at $150 per annum; and insist he should, at any rate, be charged with the hire of said slave, from the death of testator to the date oi the sale.
The Chancellor, and, as we think, correctly, disallowed this exception, except as to the hire from the death of testator to the date of the sale of the slave, *188 and directed that Daniel German, Jr., be charged with the same.
Tullas and wife also except, because the commissioner has credited Daniel German, Jr., with amount of medical bill, which, with interest, it is alleged, amounts to $850.95.
' Also, because the commissioner allows Daniel Gér-man, Jr., credit, and thus charges the estate of the testator, with the sum of $1,110.25, paid to Cliffe.
Both of these exceptions were disallowed by the Chancellor.
As before stated, the report as it appears upon this record, does not show specifically the items constituting the gross amount with which Daniel German, Jr., was credited; therefore we can not see that these two items were embraced. In view, however, of the case shown by the record, without undertaking to repeat the allegations, answers and proof touching these two items, inasmuch . as it appears the record is imperfect, as before shown, for want of the schedule made part of the .report, we will announce our conclusions touching these two items.
. We think the testator regarded himself, and was in fact, primarily liable, for the payment of the Cliffe debt; but while this is so, we think the evidence, under- all the circumstances surrounding the parties, shows further that the contract with Cliffe was for the benefit of Daniel German, Jr., and that it was the understanding between Daniel German, Sr., and Daniel German, Jr., that Daniel German, Jr., was to pay the debt himself to *189 Cliffe in the first instance, or to reimburse his father, in case he paid the same.
This view of the case, it seems to us, is in perfect harmony with the evidence, and with the statements of Daniel German, Jr., a short time after the death of his father, “that he knew every debt against the estate, and that they did not exceed ,$300.” He certainly knew of this debt, but feeling he was himself under obligations to pay it, therefore did not include it with the debts of the estate.
The proof shows, the testator was anxious that Daniel German, Jr., should be enabled, by his practice, to pay off this debt at its maturity; and we have no- doubt but that this accounts for his anxiety that Daniel German, Jr., should charge him for professional services rendered in his family, and be paid therefor. -
In this view of the case, Daniel German, Jr., having discharged the Cliffe debt out of the assets of the estate, will be held individually liable to the estate for the same; and will be entitled to a credit upon his liability to the amount of the medical bill.
The decree of the Chancellor will be modified accordingly.
Daniel German, Jr., excepts to the report, upon the ground that the allowance to him of only $200, as compensation for his services as executor, is too small. It is true, the allowance seems small; but for reasons disclosed by the commissioner in his report, and a further reason disclosed by the Chancellor in the decree, we do not feel authorized to disturb it.
*190 The decree of the Chancellor, disallowing this exception, was correct.
It has been argued that the acceptance of the legacy to Daniel German, Jr, extinguished his debt against the testator.' "We do not so understand the law, except in case it is clearly apparent from the will that the testator intended the legacy as a payment, instead of a bounty; and it is not pretended any such intention is apparent upon the face of the will.
As to costs:
The Chancellor directed that the costs of this litigation be paid by the executors, out of the residuum of the estate, which, by. the will, goes to Fannie E. Tullas. As we have already stated, the will particularly charges the residuum with the payment of debts, and the expenses of settling his estate. But have all the costs of this suit been incurred in settling testator’s estate? If they have, then the decree of the Chancellor is correct; but otherwise it is erroneous.
The bill is filed by one of the executors against his co-executors, seeking to be let into a participation with his co-executors in the administration of the estate; to compel the payment of legacies; and to prevent an alleged wrongful and fraudulent use by one of the executors, of the funds in his hands belonging to the estate; and to. charge him with assets with which he had not charged himself; and alleging that he was settling up fraudulent claims against the estate, etc. — -all of which may have been proper enough in settling the estate.
Daniel German, Jr., one of the defendants, answers *191 and sets up, that he is creditor of the estate, and insists upon his claim. In addition thereto, he insists that the Cliffe debt is the proper debt of the estate; that he is not liable therefor, etc.; and at least a portion of the costs of this suit, and counsel fees, have been incurred in an effort upon the part of Daniel German, Jr., to charge the estate of the testator with the Cliffe debt and his own account for medical services; and to that extent they are not, properly, expenses incurred in settling the estate, and cannot justly be charged upon the residuum.
A decree will be entered here, in accordance with this opinion; and the cause remanded to be proceeded in.